Pearson, J.
 

 1st. The construction of the will: There is a general residuary clause, directing a division when Thomas E. Emery arrived at full age, between such of the grand-children as may be
 
 then
 
 alive, and the issue of such as are dead. The interest of the grand-children, in the residuum, was consequently contingent, and as it has turned out, Benners Emery, who died in the life-time of the testatrix, was entitled to no part thereof, it follows that
 
 Johnson
 
 v. Johnson, 3 Ire. Eq. 426,
 
 Dickey
 
 v. Cotten, 2 Dev. and Bat. Eq. 272, and the other cases cited, have no application. So, the share which would have belonged to Benners Emery, had he lived until Thomas arrived at age, was undisposed of, and falls into the residuum, and the grand-children, who were living at that time, and the issue of such as may have died, take this fund under the will, subject to a rateable deduction in respect to annuities and the support of the five old slaves, mentioned in the pleadings, charged on the estate, and do not take it as next of kin, free from those charges.
 

 The day on which the payment of the annuties was to begin, not being fixed, it is clear that a rateable amount is. to be paid, so as to cover the fraction of the last year. There will be a
 
 *36
 
 reference to ascertain this sum, and tbe amount necessary for the support of the five old slaves.
 

 2nd. The exceptions to the report:
 

 The first exception on the part of the plaintiff is allowed. When a trustee changes an investment, without having applied to a court of equity for an order to that effect, he takes upon himself the
 
 onus
 
 of proving entire
 
 l)ona
 
 fides, and that under the circumstances there was reasonable ground to believe that the fund would be benefitted. The proofs sustain the plaintiff in both particulars. There is no suggestion that he made, or expected to make, any individual, or private gain by the change. He was interested in the fund to the amount of one-third. This puts the question on a different footing from that of a naked trust, and raises a presumption that the the trustee was doing what he believed to be for the best. Blackwell, whose notes were converted into rail-road stock, although his ci’edit was not openly doubted, yet, was a man of such extensive speculative operations as were calculated to impair his credit in some degree ; so that one, holding his paper, although he would not feel called on to force its collection, would desire a change, if an opportunity offered. The rail-road had been paying, and continued to pay, seven per cent as dividends, for several years, and the plaintiff had an opportunity of getting the stock at ninety dollars for a share. He did not make the investment hastily, but consulted with persons whose opinions were entitled to respect, and the stock of this road was looked upon as established, and stood upon a footing entirely different from that of a road just struggling into existence, where so many interests and considerations are collaterally brought to bear as inducements for subscribing, and subscriptions are often made under excitement. Besides all this, Blackwell has, in the mean time failed, suddenly, for a very large amount, so that but for the change of investment, this part of the fund might have been lost, without being chargeable to the trustee, unless he could have been fixed with greater negligence than that of the many prudent, business men, who lost their debts by Blackwell’s failure.
 

 
 *37
 
 The second exception is allowed. The point is fully covered by the doctrine discussed and established in the case of
 
 Waddill
 
 v.
 
 Martin,
 
 3 Ire. Eq. 563, in regard to the crops of cotton, corn, &c., that masters allow their slaves to make for their private use. "We entirely concur in the conclusion that policy, as well public as private, sanctions that degree of indulgence which justifies the personal representative in acting towards slaves as the master had been in the habit of doing, and it seems in that section of the State, it is usual for masters to give slaves, who are hired out, presents at Christmas, when the year ends, and for the hirer to allow each slave twenty-five cents at the end of every week as an inducement to good behavior.
 

 The third exception is also allowed to the extent of two and a half per cent as commissions on receipts, as set out. "We take a distinction between receiving dividends on bank stock, state bonds and the like, and receipts by the way of negro hire, which is very troublesome, compared with the amount raised, and is often unpleasant, as it is difficult to find hirers against whom the slaves will not make complaint.
 

 The exceptions on the part of the defendant are both overruled. The first is not sustained in point of fact. The plaintiff did file an inventory, which was sufficiently specific when explained by the statement, that he had charged himself with
 
 all of the notes
 
 of his testatrix as good, except those of Blackwell, which were invested in rail-road stock as referred to above, with which he is charged.
 

 In respeet to the second, we think five per cent upon the hires of slaves, is certainly not an unreasonable allowance, considering that it is troublesome and unpleasant, and the amount does not swell up as in the case of the sale of slaves.
 

 Upon the hearing of a motion to dissolve an injunction brought up to this term by appeal, in a cause pending in the court below, between the plaintiff and Thomas E. Emery one of the defendants, the plaintiff had leave to treat his bill as a petition or motion in this cause, and the answer of the said Emery as a reply thereto, upon the undertaking' of the plain
 
 *38
 
 tiff to dismiss his bill at the next term of the Court below. Thereupon, the plaintiff insists that he is entitled to an order directing the defendant, Thomas E. Emery, to dismiss the action, which he lias commenced against the plaintiff and his sureties on the administration bond. The Courtis of opinion that the plaintiff is entitled to the order. The j urisdiction of a court of equity for the settlement of estates is well established. After a decree for an account, the course of the court is to prevent any of the parties from resorting to a separate proceeding ; on the ground, that it would interfere with the orderly action of the court, and defeat the end for which jurisdiction was assumed, and is supererogatory and vexatious. To this end, a petition may be filed, or a motion made in the cause. Adams’ Eq. 483-4-5, and notes;
 
 Simmons
 
 v.
 
 Whit
 
 aker, 2 Ire. Eq. 129. If the proceeding was commenced
 
 before
 
 the decree for an account was entered, the order is to stay its further prosecution, but if it be commenced after the decree for an account, it is proper to require the party to dismiss, as being useless and vexatious. In this case, the action at law was commenced after the decree.
 

 It is insisted that the defendant had a right to sue at law, and the proceeding is not obnoxious to the charge of being useless and vexatious, because it extends to the
 
 sureties
 
 on the bond, and is, therefore, a moré certain remedy. In the absence of a direct allegation that the plaintiff is insolvent, or unable to perform the decree that the defendant expected to obtain against him, we are forced to look upon the action at law as useless and vexatious, or at all events, as interfering with the jurisdiction of this Court after it had undertaken to adjust the rights of the parties, and as not calculated to benefit the plaintiff in the action. If the bond covers only a breach of the plaintiff’s diríja as administrator, the party’s remedy at law, is much more restricted than in equity. If the bond extends to a breach of the plaintiff’s duty as trustee, (a question which we cannot decide, as the bond is not before us,) a court of law is clearly incompetent to
 
 “
 
 administer the right.” It cannot put a construction on the will, nor can it decide upon
 
 *39
 
 the liability of the trustee in respect to changing the investment of a part of the fund ; so, the action can do no good, and ought not to have been instituted. If the plaintiff fails to perform the final decree, a supposition which we are not now at liberty to make, the remedy against his sureties will be open.
 

 Peb Curiam. Decree.